## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

CLIFFORD A. ZUKER, as plan
administrator for R&G Financial Corp.

    Plaintiff,

        v.

ROLANDO RODRIGUEZ, et al.

    Defendants.

CIVIL NO. 12-1408 (PAD)

## OPINION AND ORDER

Delgado-Hernández, District Judge.

    This is an action by the administrator of a bank-holding company liquidation plan against (i) six former officers of the holding company, and where applicable, their spouses and legal conjugal partnerships for alleged breach of fiduciary duties; and (ii) XL Specialty Insurance Company ("XL"), as the former officers' insurer. The Federal Deposit Insurance Corporation ("FDIC") intervened as receiver of the holding company's banking subsidiary. Because plaintiff lacks standing to bring forth the action, which belongs to the FDIC as receiver of the subsidiary ("FDIC-R"), the Complaint must be dismissed.

## I.    BACKGROUND

    R&G Financial Corporation ("RGFC") was a publicly traded bank holding company incorporated in Puerto Rico in 1972 (Docket No. 1-3 at ¶ 45). It owned R-G Premier Bank (the "Bank") and other subsidiaries. Id. at ¶¶ 45-46. On April 30, 2010, regulators closed the Bank and appointed the FDIC-R as the Bank's receiver. Id. at ¶¶ 128-129. On May 14, 2010, RGFC filed a Chapter 11 petition in the Bankruptcy Court for the District of Puerto Rico (id. at ¶¶ 4, 129-130) which on December 21, 2011, confirmed RGFC's Liquidation Plan. Id. at ¶ 25. On January

5, 2012, the Plan became effective. Id. The same day, plaintiff was appointed plan administrator, (id. at ¶ 44) and on May 11, 2012, initiated the present action in an adversary proceeding on behalf of the estate seeking not less than $278 Million in damages (Docket No. 1-3).

On August 10, 2012, reference of this action to the bankruptcy court was withdrawn (Docket No. 21). On August 30, 2012, the FDIC-R intervened as receiver of the failed bank (Docket No. 24). Thereafter, the former officers and the FDIC-R moved to dismiss (Docket Nos. 32-1, 34-1, 53 and 54). Plaintiff opposed dismissal (Docket No. 63); the former officers and the FDIC-R replied (Docket Nos. 64, 65, 67, 71); the former officers filed a notice of "subsequently decided authority" in support of their motions to dismiss (Docket No. 92); plaintiff responded (Docket No. 94); the former officers replied (Docket Nos. 95-1, 97); and plaintiff sur-replied (Docket No. 98).

On December 30, 2016, plaintiff notified withdrawal of various claims (Docket No. 145). The FDIC-R responded (Docket No. 146), and all but one of the former officers (Joseph Sandoval) joined in and adopted the FDIC-R's response.[1] XL did not oppose withdrawal, reserving the right to oppose any relief plaintiff may seek in the future (Docket No. 151). On January 10, 2017, the court held a hearing on all pending motions (Docket No. 152).

---

[1] The Complaint contains 11 Counts and 199 paragraphs in addition to an introductory paragraph and prayer for relief (Docket No. 1-3). In opposing dismissal, plaintiff classified the claims into two separate categories. The first category ("Category I Claims") includes certain allegations of Counts V-VI and Counts VII-X, which according to plaintiff, are purportedly based on conduct that gives rise to a claim by RGFC against its own officers and might give rise to a claim by the Bank against the Bank's officers (Docket No. 63 at pp. 74-75). The second ("Category 2 Claims") are purportedly based on conduct that in plaintiff's view, "breached no duty to the Bank" such that "the Bank has no claim against anyone –even its own officers and directors – based on such conduct." Id. at p. 77. These claims include those set in Counts I-IV, and claims other than "Lending Practices Approval Claims" included in Counts V and VI. (Docket No. 145 at p. 5). Count XI contains the claim against XL. In the notice of withdrawal of the Category I Claims, plaintiff stated that the "law of standing … has not developed since the filing of the Opposition in a way that supports the position that [plaintiff] has standing to pursue the Category I Claims." Id. at p. 4. The FDIC-R challenged plaintiff's characterization of the claims, and while not opposing the dismissal of the Category I Claims, it pointed out that plaintiff lacks standing to maintain the remaining Category 2 Claims (Docket No. 146 at pp. 3-7). The effect of the withdrawal notice is discussed at Section IV-E, but at bottom, the court will focus its analysis on the Category 2 Claims.

## II.     STANDARD OF REVIEW

All but one of the dismissal requests were made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The request at Docket No. 53-1, however, was made on the authority of Rule 12 (c).  But the standard of review on a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion.  <u>See</u>, <u>Galgliardi</u> v. <u>Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008)(so noting).  To survive dismissal under Rule 12(b)(6), a complaint must allege a plausible entitlement to relief. <u>Rodríguez-Vives</u> v. <u>Puerto Rico Firefighters Corps.</u>, 743 F.3d 278, 283 (1st Cir. 2014); <u>Rodríguez-Reyes</u> v. <u>Molina-Rodríguez</u>, 711 F.3d 49, 53 (1st Cir. 2013); <u>Rodríguez-Ortiz</u> v. <u>Margo Caribe</u>, 490 F.3d 92, 95 (1st Cir. 2007).

Plausibility involves a context-specific task calling on courts to examine the complaint as a whole, separating factual allegations (which must be accepted as true) from conclusory allegations (which need not be credited).  <u>García-Catalán</u> v. <u>United States</u>, 734 F.3d 100, 103 (1st Cir. 2013); <u>Morales-Cruz</u> v. <u>Univ. of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012).  All reasonable inferences from well-pleaded facts must be drawn in the pleader's favor.  <u>Foley</u> v. <u>Wells Fargo Bank, N.A.</u>, 772 F.3d 63, 68 (1st Cir. 2014); <u>García-Catalán</u>, 734 F.3d at 102-103.  If, so construed, the combined allegations plead facts enough to nudge the claim across the line from conceivable to plausible, the case should not be dismissed under Fed.R.Civ.P. 12(6).  Otherwise, dismissal is appropriate as a matter of law.

## III.    DISCUSSION

### A.  General Framework

The movants seek dismissal on various grounds, including lack of standing.[2]  To that end, the FDIC-R and the former officers contend the action is derivative, and as such, belongs to the FDIC-R (Docket No. 32-1 at p. 10; Docket No. 34-1 at p. 15; Docket No. 53 at p. 6; Docket No. 54 at p. 2).  In turn, plaintiff characterizes the claim as a direct action he is entitled to pursue on behalf of the estate (Docket No. 63 at pp. 19-20).

A trustee in bankruptcy succeeds to all rights of the debtor, including the right to assert any causes of action belonging to the debtor.  See, O'Halloran v. First Union National Bank of Florida, 350 F.3d 1197, 1202 (11th Cir. 2003)(stating principle).  A debtor's right to bring a legal claim is part of the bankruptcy estate.  Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 356 (3rd Cir. 2001).  Hence, as plan administrator plaintiff has the authority to assert any cause of action that RGFC could have brought in its own right.

The stated authority includes the right to assert claims against officers and directors for failure to fulfill a duty to the corporation.  As explained below, however, such power is limited by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA")(codified as amended in scattered sections of 12 U.S.C.), which grants the FDIC ownership over derivative claims of failed financial institutions.

---

[2] Additionally, the former officers argue that the case should be dismissed because, from their perspective, it is (i) untimely; (ii) barred by res judicata; (iii) precluded by a release executed in connection with prior litigation in various cases involving RGFC, some of the former officers, and RGFC's shareholders in the United States District Court for the Southern District of New York; and (iv) insufficiency of factual allegations necessary to plausibly support individualized claims for breach of fiduciary duties (Docket No. 32-1 at pp. 9-10; Docket No. 34-1 at p. 9; Docket No. 53 at pp. 2-3).  Affirmative defenses may be adjudicated on a motion to dismiss for failure to state a claim.  See, In re Colonial Mortgage Bankers Corp. v. López-Stubbe, 324 F.3d 12, 16 (1st Cir. 2003)(so acknowledging).  Nonetheless, given that the court considers the standing issue dispositive, it expresses no view on the alternate grounds for dismissal discussed in defendants' motions.

The FDIC was established in 1933 in response to an epidemic of bank closures during the Great Depression, to restore confidence in the Nation's banking system by creating a system of deposit insurance. <u>See</u>, Banking Act of 1933, Pub. L. No. 73-66, 48 Stat 162. Subsequent legislation expanded and refined the FDIC's role in this area. <u>See</u>, FDIC Act of 1950, Pub. L. No. 81-797, 64 Stat. 873; Financial Institutions Supervisory Act of 1966, Pub. L. No. 89-695, 80 Stat. 1028; FIRREA; Federal Deposit Insurance Corporation Improvement Act of 1991, Pub. L. No. 102-242, 105 Stat. 2236; Federal Deposit Insurance Reform Act of 2005, Pub. L. No. 109-171, 120 Stat. 4; and the Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, 120 Stat. 1966. As part of its responsibilities, the FDIC acts as an insurer, overseer and regulator; and as conservator or receiver of troubled and insolvent financial institutions. <u>See</u>, <u>FDIC</u> v. <u>Arrillaga-Torrens</u>, 212 Fed.Supp.3d 312, 346-347 (D.P.R. 2016)(discussing FDIC's origin and multiple roles)(<u>citing</u> <u>FDIC</u> v. <u>Ernst & Young LLP</u>, 374 F.3d 579, 581 (7th Cir. 2004); <u>FDIC</u> v. <u>Eckert Seamans Cherin & Mellott</u>, 754 F.Supp. 22, 24 (E.D.N.Y. 1990); and Schroeder, *The Law and Regulation of Financial Institutions*, 12-1 (A.S. Pratt & Sons Group, 2012 update)).

As receiver, the FDIC "steps into the shoes" of the failed institution, succeeding to all rights, titles, powers and privileges of the insured depository institution, and of any stockholder, member, accountholder depositor, officer, or director of such institution with respect to the institution and the assets of the institution. <u>See</u>, 12 U.S.C. § 1821(d)(2)(A)(so providing). As such, it owns all derivative claims against the institution's officers and directors, including claims against directors and officers of the institution's holding company. <u>See</u>, <u>Barnes</u> v. <u>Harris</u>, 783 F.3d 1185, 1192-1193 (10th Cir. 2015)(recognizing that when the FDIC becomes a bank's receiver, FIRREA gives it all rights that the holding company, a stockholder of the bank, possesses with respect to the bank and its assets, and for the same reason, if a holding company's claims are based

on harm derivative of injuries to the bank, they qualify as claims of a shareholder with respect to the bank that belong to the FDIC);  Pareto v. FDIC, 139 F.3d 696, 700 (9th Cir. 1998)(noting that FIRREA vests all rights and powers of a stockholder of the bank to bring a derivative action in the FDIC).   On this formulation, plaintiff may move forward if he asserts a direct rather than a derivative claim.[3]

### B.  Defining Features

State law determines whether a cause of action is derivative or direct, for the identity of the real party in interest depends on the law creating the claim.  See, TC Investments Corp. v. Becker, 733 F.Supp.2d 266, 281 (D.P.R. 2010)(so recognizing).  Hence, Puerto Rico law governs this action as RGFC was incorporated in Puerto Rico (Docket No. 1-3 at ¶ 45); and plaintiff's action is predicated on Puerto Rico law.[4]

In Puerto Rico, the distinction between a derivative action and a direct action depends on the nature of the wrong alleged and to whom the relief should go if plaintiff were to prevail.  See, Becker, 733 F.Supp.2d at 282-283 (so noting in distinguishing direct and derivative actions under Puerto Rico law)(citing Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A. 2d 1031, 1036 (Del. 2004)(discussing both types of actions under Delaware law)).[5]  The derivative action permits an

---

[3] See, Vieira v. Anderson (In re Beach First National Bancshares, Inc.), 702 F.3d 772, 778-779 (4th Cir. 2012)(distinguishing between direct claims and derivative claims in concluding that under FIRREA, trustee in bankruptcy of a bank holding company may only assert direct claims), quoting Lubin v. Skow, 382 Fed.Appx. 866, 873 (11th Cir. 2010)(holding that bankruptcy trustee could bring claims for direct harm to the holding company as opposed to derivative claims, which correspond to the FDIC).

[4] It also seems that the Bank was chartered in Puerto Rico.  See, FDIC as Receiver of R-G Premier Bank of Puerto Rico v. Víctor J. Galán et. seq, Civ. No. 12-1029 (PAD), a related case arising from the Bank's failure, at Docket No. 1 at ¶ 4 (alleging that the Bank was chartered in Puerto Rico).  The allegation was admitted by 15 of the 19 former director/officer defendants in that case, all of whom (with the exception of XL and other insurers) are former officers and directors of the Bank, including some of the former RGFC officers here.  On the authority to take judicial notice of a complaint filed in a related case in the context of a  motion to dismiss, see, E.I. Du Pont de Nemours & Co., Inc. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986).

[5] Puerto Rico's corporate law is modeled after Delaware's corporate law.  In re First Bancorp. Deriv. Litigation, 465 F.Supp.2d 112, 118 (D.P.R. 2006).  Its historical development is described in Carlos Díaz-Olivo, Corporaciones: Tratado sobre Derecho Corporativo at pp. 12-15 (2016).

individual shareholder to bring suit on behalf of a corporation for harm done to the corporation or to enforce a corporate cause of action against officers, directors and third parties. See, Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 95 (1991)(describing action). By contrast, in a direct action the stockholder sues for injuries affecting his or her legal rights as a stockholder. See, Tooley, 845 A.2d at 1036 (so explaining). In the context of a claim for breach of fiduciary duty, the distinction between the actions focuses on whether plaintiff demonstrates that he can prevail without showing an injury to the corporation. If so, the action is direct. Id. If not, the action is derivative. Id.

### C.  Claims Asserted[6]

Applying these principles, RGFC's action is derivative. According to the Complaint, RGFC issued misleading financial statements (Docket No. 1-3 at ¶¶ 7-12, 64-66). When the accounting improprieties were detected, RGFC was required to restate the 2002-2004 financial statements. Id. at ¶¶ 12-15; 70, 72-74. However, it delayed issuing those statements for more than two and one-half years. Id. at ¶¶ 13-16, 75-78, 83, 85-86, 94, 102-103. In addition, it failed to issue audited financial statements for 2005 through 2007 until 2009, and audited financial statements for 2008 until February 2010. Id.

To this end, the Complaint charges defendants with failing to maintain effective internal controls with respect to financial reporting, which resulted in delay in the issuance of the audited financial statements; and in failing to take steps necessary to enable RGFC to restate the misleading financial statements in a reasonably timely manner and to issue subsequent audited financial

---

[6] To facilitate review, bold-letter format is used in this section to highlight reference to certain aspects of plaintiff's allegations implicating the Bank and the mortgage banking subsidiary.

statements on a timely basis.  Id. at ¶¶ 85-87, 100-117.  And it blames those failures for depriving

RGFC of access to otherwise available sources of capital at a time when such access was critical

to its continued existence and were a substantial contributing cause of RGFC's demise.  Id. at ¶¶

21-33, 99, 149, 154, 159.  With this background, paragraph 17 of the Complaint states that

defendants' failure to fulfill their duties rendered RGFC unable to access the capital markets at a

time when such access was critical to the survival of the **RGFC Group**.[7]

Paragraph 19 states that defendants' failure to implement an effective enterprise-wide risk

management system allowed a toxic concentration of high-risk acquisition, development and

construction real estate ("ADC") loans to develop in **the subsidiaries'** loan  portfolios, which

experienced a high default rate causing substantial losses to RGFC that impaired its capital and

concentration of non-conforming residential mortgages in **RGFC Group's loan portfolios**.

Paragraph 21 states that the inordinate delay in producing the audited financial statements

compounded the adverse effect of the losses by preventing RGFC from accessing the capital

markets to replenish the capital of the **RGFC Group** eroded by the losses.  The Bank was part of

the RGFC Group and a subsidiary of RGFC.

Paragraph 22 states that RGFC's inability to attract capital and **recapitalize the Bank**

**impeded the Bank's ability to maintain liquidity sufficient for survival** not only by

discouraging the development of a healthy base of core deposits but also by dissuading even

volatile, noncore sources of liquidity, such as investors in brokered CD's, **from providing**

---

[7] From the Complaint, RGFC owned the Bank, R&G Mortgage Corporation, R-G Crown Bank, R&G Acquisition Holding Corporation, R&G International Corporation, and R-G Investments Corporation (Docket No. 1-3 at ¶ 46).  R&G Mortgage became a direct subsidiary of the Bank on April 28, 2010, prior to the FDIC-R's appointment as receiver.  Id. R-G Crown Bank was sold to Fifth Third Financial Corporation in 2007.  Id.  Its parent corporation was R-G Acquisition Holdings.  Id.  In 2009, R&G International Corporation merged into RGFC.  Id.  In October 2006, a portion of R-G Investments' assets were sold to UBS Financial Services.  Id.  At Docket No. 63, plaintiff refers to RGFC and its subsidiaries as the "RGFC Group."  Id. at p. 20.

**liquidity to the Bank**, **ultimately resulting in its failure and the demise of RGFC.**  Paragraph 23 states that defendants' failures lead to inability to raise capital and to capital eroding effects of the concentration of ADC real estate loans and nonconforming residential loans in the loan portfolios of **RGFC's subsidiaries**, **which damaged RGFC**.  As stated above, the Bank was an RGFC subsidiary.

Paragraph 121 states that the lack of oversight caused **the Bank** to accept more risk in its loan portfolio than was prudent; the lack of risk management became exacerbated after the accounting fraud became public; and since **the Bank** did not know the full extent of the risks in its residential mortgage loan portfolio caused by the fraudulent transactions, it continued to enter into high-risk real estate loans.  Paragraph 123 states that the lack of oversight over **the bank operating subsidiaries** caused RGFC as an enterprise to increase its exposure to riskier ADC loans.  Paragraph 126 states that defendants did not develop reliable sources of liquidity for **RGFC's Enterprise**, such that **the operating bank subsidiaries** became too dependent on non-core funding sources like brokered deposits, for liquidity.  Paragraph 128 states that as a result of the breaches by defendants, **the operating bank subsidiaries failed and were seized by the FDIC**.  The Bank was one of RGFC's operating bank subsidiary, and at the time the FDIC-R was appointed receiver, the parent company of the mortgage banking subsidiary.

Paragraphs 144, 149, 154 and 159 state that as a result of breach of fiduciary duties, RGFC was not able to access capital markets and attract private capital for over a five-year period, and that the failure to issue timely and accurate financial reports, including accurate GAAP-compliant audited financial statements, caused RGFC to receive lower ratings as a bank  holding company **and proximately caused, or significantly contributed to the decision of the FDIC to seize RGFC's operating bank subsidiaries.**  The Bank was one of RGFC's operating bank subsidiary,

and at the time the FDIC-R was appointed receiver, the parent company of the mortgage banking subsidiary.

Finally, Paragraph 170 states that defendants' duties included providing accurate and complete information and disclosures to RGFC's Board regarding the financial condition of RGFC **and its subsidiaries,** the adequacy and effectiveness of the systems, procedures, and personnel in place, to enable RGFC **and its subsidiaries** to properly account for and accurately report on the financial results of RGFC **on a consolidated basis**, and the adequacy and effectiveness of internal risk management and assessment functions in place **to enable defendants and the Bank to assess and manage the risks in the ADC portfolio**.  The Bank was one of RGFC's operating bank subsidiary, and at the time the FDIC-R was appointed receiver, the parent company of the mortgage banking subsidiary.

### D.  Nature of Claims

From these allegations, plaintiff purportedly characterizes as direct claims, those included in Counts I through IV of the Complaint, and claims other than the Lending Practices Approval Claims in Counts V and VI, which as stated earlier, he has classified as Category 2 Claims.  See, Docket No. 145 at p. 5 (describing claims).[8]  But the allegations do not bring forth any injury independent of alleged injury to the Bank.  So the action is derivative.  Plaintiff challenges this conclusion because as he views the action, it is directed against RGFC's former officers for breach of fiduciary duties to the holding company (Docket No. 63 at pp. 92-93).  A review of caselaw, however, shows that if directors owed a duty to a holding company yet cannot show an independent injury, the claims are derivative.  And without an independent injury, there is no direct claim.  See,

---

[8] Basically, Counts I through IV deal with failure to implement and maintain effective internal controls (Docket No. 1-3 at pp. 41-44), and Counts V and VI deal with failure to provide accurate and complete information.  Id. at pp. 45, 47.

<u>Becker</u>, 733 F.Supp. at 283 (dismissing stockholders' claim under Puerto Rico law because whether or not the duties that the defendant allegedly breached were owed to them as stockholders, they did not demonstrate that they could prevail without a showing of an injury to the corporation).[9]  The principle undergirds failed-bank litigation as well.

In <u>Barnes</u>, 783 F.3d at 1185, three shareholders of the holding company of a failed bank brought suit against the company and its officers and directors for breach of fiduciary duties.  <u>Id</u>. at 1188-1189.  They alleged the bank was the holding company's sole or primary asset; that defendants should have removed and replaced the bank's management; and that the holding company (i) breached an agreement with the Federal Reserve Bank to change the bank's practices, (ii) improperly issued dividends, (iii) misused $265,000.00, and (4) together with the bank, issued a $9 Million tax refund on a joint return, none of which the holding company recovered.  <u>Id</u>. at pp. 1188-1189.  Other than the allegation regarding the $265,000.00, the Court considered the claims derivative, as they rested on harm to the holding company derivative of injury to the bank.  <u>Id</u>. at 1193.  As such, they belonged to the FDIC.  <u>Id</u>. at 1195.

---

[9] In <u>Becker</u>, 733 F.Supp.2d at 266, members of four limited liability companies asserted claims for mismanagement of  properties (shopping centers) owned by the LLCs.  First, they alleged that defendant used the LLCs own funds, resources, equipment and personnel to his personal advantage, mismanaging the properties, which were not adequately kept, and consequently devalued.  <u>Id</u>. at pp. 282-283.  These allegations asserted injuries to the LLCs (and/or the properties).  Second, the claimants stated that defendant breached his fiduciary duties towards them in devaluing the properties to try to acquire them at a cheap price; paid over $300,000.00 to himself and through a third party in violation of Puerto Rico's Realty Law; further paid approximately $50,000.00 to himself in commissions for leases in a property interest that never came into place; did not provide adequate information to the claimants; refused to comply with specific orders from them, and lied to them about the status of the operations.  These latter allegations showed injuries to the claimants as individuals.  Nonetheless, the court concluded the claims were derivative because the claimed injury was not independent of the alleged injury to the LLCs.  For that reason, whether or not the duties allegedly breached were owed to the claimants as stockholders of the LLCs, the claimants did not demonstrate that they could prevail without showing an injury to the corporation.  <u>Id</u>. And thus, the claims were dismissed. <u>Id</u>.; <u>see also</u>, <u>Pagán</u> v. <u>Calderón</u>, 448 F.3d 16 (1st Cir. 2006), where a corporation and its shareholders asserted claims against a defendant arising from denial of financing to the corporation for alleged political reasons.  The complaint alleged the corporation was unable to fulfill its contractual obligations when it did not receive the requested loan, shut down its operations, and had no future prospects for reopening.  For their part, the shareholders claimed that failure to receive the loan depreciated the value of the corporation's stock.  Consistently with the principle previously mentioned, the court concluded that the shareholders' action was derivative.

In <u>Levin</u>, 763 F.3d at 667, the trustee of a bank holding company sued three of the company's directors and officers, alleging they violated their fiduciary duties to the holding company by allowing its subsidiary banks to specialize in mortgages that were especially hard-hit in 2007 and 2008. <u>Id.</u> at 669-670. He argued defendants should have diversified the banks' portfolios; hedged the risk using other instruments or both; and thus were liable to the holding company for failing to implement holding-company level rules that would have compelled them to curtail bank-level risks. <u>Id.</u> at 670.

He asserted that defendants allowed the bank holding company to pay dividends in amounts that left it short of capital when the financial crunch arrived and that the bank holding company would not have distributed money to investors had defendants furnished better information about the banks' portfolios, for then the holding company would have realized the benefit of being better capitalized. <u>Id.</u> And he stated defendants capitulated to the FDIC and caused the holding company to contribute millions of dollars in new capital to the banks, even though they knew or should have known that this was the equivalent to throwing money away. <u>Id.</u> The Court held that all claims were derivative except the claims involving (i) payment of dividends to investors of the holding company, and (ii) investment of money in the banks even after they had failed. <u>Id.</u> at 670-672. The derivative claims corresponded to the FDIC. <u>Id.</u>

In <u>Vieira</u>, 702 F.3d at 772, the trustee in bankruptcy of a failed bank's parent company sued the company's former directors and officers alleging they breached a number of duties to the parent company, resulting in mismanagement and lack of oversight of the bank and over the parent company's interest in a real estate holding entity. <u>Id.</u> at 775. He asserted that defendants (i) failed to establish, maintain and enforce proper and needed controls, systems and procedures at the bank in order to ensure the financial success of the bank as the parent company's wholly-owned

corporate asset (<u>id.</u> at 778); and (ii) failed to implement and enforce prudent lending and underwriting practice and standards, allowing the bank to engage in high volume of real estate and construction lending practices of an imprudent and risky nature in excess of reasonable and prudent lending practices.  <u>Id.</u>

He further complained that defendants appointed unqualified directors to the bank's board, and failed to ensure the bank submitted a capital restoration plan that complied with the requirements of the Office of the Comptroller of the Currency ("OCC"), which in turn resulted in the OCC's closing of the bank.  <u>Id.</u> at 779.  He stated that defendants caused the parent company to improperly subordinate its equity interest in a corporation that owned real property.  <u>Id.</u> at 779-780.  The Court deemed derivative all claims except the equity subordination claim, and held that the right to pursue the derivative claims belonged to the FDIC.  <u>Id.</u>

In <u>Lubin</u>, 382 Fed.Appx. at 866, the bankruptcy trustee for a holding company sued officers of both the holding company and the failed subsidiary bank seeking damages for breach of fiduciary duties and negligence.  <u>Id.</u> at 869.  He alleged that through mismanagement and risky lending practices, defendants harmed the holding company and endangered the capital that it provided to the bank.  <u>Id.</u>  He asserted that because the holding company raised the money to increase the bank's lending capital and expand its operations mostly through debt issuances, those debt issuances materially encumbered and put at risk the equity interests of the holding company's stockholders.  <u>Id.</u>  He argued that defendants impaired the bank's working capital and wasted its assets so as to cause economic loss to the holding company as well as the holding company's ultimate bankruptcy.  <u>Id.</u> at 870-871.  The Court concluded that the action was derivative because the alleged harm to the holding company was inseparable from the harm done to the bank, and the

bank's insolvency forced the holding company into bankruptcy.  Id. at 871-872.  So viewed, the action belonged to the FDIC.  Id.

From this survey, breach of duties to a holding company does not make the action direct unless plaintiff can prevail without showing an injury to the failed banking entity.  Plaintiff has not so demonstrated.  Instead, he argues there is no principled basis for transporting the "separate injury" test to deprive a corporation that happens to be a holding company of claims against its own officers for breach of their duties to the holding company (Docket No. 63 at pp. 70-71).  But that is not so.

As mentioned above, in Barnes the Court considered direct, the claim that the holding company misused $265,000.00 by paying directors and officers insurance policy premiums and retaining counsel for the defendants.  In Levin, the Court deemed direct, a claim that officers and directors allowed the holding company to pay dividends in amounts that left it short of capital by distributing too much to its investors; and a claim that the officers and directors invested more money in the banks even after they had failed, hence downstreaming funds from the holding company to its bank subsidiaries where there was no realistic prospect that the bank would survive. In Vieira, the Court found a direct claim in the allegation that the holding company's directors, contrary to standard and prudent practices, caused the holding company to subordinate the holding company's majority interest in an LLC to that of a minority interest holder, which caused the loss of the holding company's equity interest in the LLC.

Those situations show unique harm to the holding companies, different from what has been alleged here.  In effect, plaintiff has not claimed misuse of holding company funds to improperly pay insurance premiums or other benefits to the holding company's directors and officers; improvident payment of dividends to its own investors; improper downstreaming of funds to

RGFC's subsidiaries or similar harm.[10]  And so he has not demonstrated that he can prevail without

showing injury to the Bank.

Plaintiff objects that if the rationale of these cases is accepted, then, as a practical matter,

an officer of a holding company has no duty to the holding company to protect and preserve its

interests in its principal assets, its subsidiaries, because if there is no effective remedy for breach

of a duty, the duty is illusory (Docket No. 63 at p. 93).  Contrary to plaintiff's understanding, a

subsidiary may maintain an action against its corporate parent or controlling shareholder.  See,

Murray v. Miner, 876 F.Supp. 512, 516 (S.D.N.Y. 1995)(so observing in process of examining

issue under Delaware law).  In like manner, the shareholder of the subsidiary corporation may

assert derivative claims against the directors of the subsidiary's parent for injury to the subsidiary

corporation.  See, Bokat v. Getty Oil Co., 262 A.2d 246, 249 (Del. 1970)(so recognizing in

connection with Delaware law).  But both scenarios lead to the FDIC-R – not plaintiff – as claim

owner.

Asssertion of claims which belong to an insolvent bank are part of the process of winding

up the bank's affairs.  While it is up to the FDIC-R to determine whether to pursue those claims,

Vieira, 702 F.3d at 781 (acknowledging that in pursuit of its rights, the FDIC may take any action

---

[10] Naturally, those are not the only instances of recognized direct actions.  Also recognized as direct actions are actions: (1) founded on contractual rights; (2) to enforce the right to vote, to protect preemptive rights, to prevent the improper dilution of voting rights, or to enjoin the improper voting of shares; (3) to compel dividends or to protect accrued dividend arrearages; (4) challenging the use of corporate machinery or the issuance of stock for a wrongful purpose (such as an attempt to perpetuate management in control or to frustrate voting power legitimately acquired by existing shareholders); (5) to enjoin an ultra vires or unauthorized act; (6) to prevent oppression of, or fraud against, minority shareholders; (7) to compel dissolution, appoint a receiver, or obtain similar equitable relief; (8) challenging the improper expulsion of shareholders through mergers, redemption, or other means; (9) to inspect corporate books and records; (10) to require the holding of a shareholders' meeting or the sending of notice thereof; and (11) to hold controlling shareholders liable for acts undertaken in their individual capacities that depress the value of the minority's shares. See, Carlos Díaz-Olivo, Corporaciones, pp. 419-420 (discussing difference between direct and derivative actions with reference to, inter alia, 2 American Law Institute, Principles of Corporate Governance: Analysis and Recommendations, § 7.01 com. C (1994)).  Plaintiff does not raise any of these scenarios.  On the same subject matter, see 12B Fletcher Cyclopedia of the Law of Corporations §§ 5907-5911 at 486-527 (2009 Rev. & 2016-2017 Cum. Supp.); and II James D. Cox, Thomas Lee Hazen & F. Hodge O'Neal, Corporations, § 15.3 at pp. 15.26-15.27 (Little Brown & Company, 1996).

authorized by FIRREA which the FDIC determines is in the best interests of the bank, its depositors, or the FDIC), it is worth noting that in a related case arising out of the Bank's failure, the FDIC-R is seeking damages resulting from inadequate oversight and inappropriate approval of risky loans.[11]  In consequence, there is no occasion to find remedies illusory.

Plaintiff urges the court to apply General Rubber Co. v. Benedict, 109 N.E. 96 (N.Y. 1915), and In re First Cent. Financial Corp., 269 B.R. 502 (Bankr. E.D.N.Y. 2001), New York cases that do not require separate and distinct damages to support a direct action (Docket No. 63 at pp. 95-98).  Their holding, however, is contrary to well established authority in Puerto Rico and Delaware.  For that reason, the court does not find them persuasive.  In the end, plaintiff must show that he can succeed in the absence of injury to the Bank.

Plaintiff maintains the claims cannot be considered derivative unless they are brought by RGFC in its capacity as a shareholder of another corporation and in the name or right of this other corporation (Docket No. 63 at p. 94).  He argues that because he is not suing former officers as a shareholder of the Bank to redress an injury to the Bank or to enforce a duty owed to the Bank, the claim is direct.  Id.  A claim is not direct simply because a stockholder classifies it as such in its complaint.  It is the nature of the wrong alleged and not the pleader's designation or stated intention

---

[11] See, FDIC as Receiver of R-G Premier Bank of Puerto Rico v. Víctor J. Galán et. seq, Civ. No. 12-1029 (PAD) (Docket No. 1), where, among other things, the FDIC-R alleges that regulators repeatedly and continuously warned the Bank's Board and senior management that they were not exercising proper oversight, and that internal controls were woefully deficient.  Id. at ¶ 50.  In addition, it claims that defendants failed to institute effective internal controls to ensure that loans complied with principles of prudent risk management; and that most of the Bank's classified loans had been approved under weak and liberal underwriting standards, including liberal lending practices on construction and land development loans.  Id. at ¶¶ 49, 252-253.  It characterized the Bank's failure as "one of the largest bank failures in Puerto Rico's history, costing the Deposit Insurance Fund over $1.46 billion in losses.  Id. at ¶ 1.  On that end, it seeks to recover $160 million out of failure to supervise the Bank's lending, and damages exceeding $257 million in connection with 77 transactions.  Id.  Similarly, plaintiff claims at Paragraph 19 of the Complaint that defendants' failure to implement an effective enterprise wide risk management system allowed a toxic concentration of high-risk acquisition development and construction loans, and real estate loans to develop in the subsidiaries' loan portfolios (Docket No. 1-3 at p. 10).  He asks for not less than $278 million in damages.  Id. at p. 54.  It is difficult not to perceive the substance of the allegations as mirror images of each other.

that controls.  See, Lubin, 382 Fed.Appx. at 871 (stating test); Kramer v. Western Pacific Industries, Inc., 546 A.2d 348, 352 (Del. 1988)(relying on same test to evaluate whether a cause of action is direct or derivative under Delaware law); Díaz-Olivo, *Corporaciones* at p. 419 (focusing on nature of the injury alleged in the body of the complaint and not on plaintiff's designation of action to determine whether complaint states a derivative or a direct claim); 12B *Fletcher Cyclopedia of the Law of Corporations,* § 5911, pp. 518-519 (same).  The wrong or injury alleged in the present case makes the action derivative, not direct.

### E.  Withdrawal

As noted above, in December 2016 plaintiff filed a notice of withdrawal of what he categorized as Category I Claims.  See, supra note 1; Docket No. 1, 45 at p. 5.  He expressed that he was doing so without prejudice to his right to pursue what he has referred to as Category 2 Claims.  Id.  He stated that he stood "ready to formalize the withdrawal of the Category 1 Claims in the manner deemed best by the [c]ourt, such as perhaps, by the filing of an amended complaint." Id.

Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, a plaintiff may dismiss an action without court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment.  Defendants have served neither.  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not the equivalent to an answer or a motion for summary judgment.  See, Universidad Central del Caribe, Inc. v. Liaison Committee on Medical Educ., 760 F.2d 14, 17 (1st Cir. 1985)(so observing).  Nevertheless, as used in the Rule, the term "action" denotes the entire controversy: it speaks of "an action," not a claim in an action.  See, Gobbo Farms & Orchards v. Poole Chemical Co., Inc., 81 F.3d 122, 123 (10th Cir. 1996)(noting distinction). To that extent, it is applicable only to the voluntary dismissal of all claims in the

action.  See, 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2362 at 413-14 & n.13 (3d ed. 2008 & Supp. 2012)(analyzing issue and collecting cases); 8 *Moore's Federal Practice* § 41.2 [1], [2] and [3] at pp. 41-29-41-35.

In a case with multiple defendants, voluntary dismissal of all claims against a single defendant is permitted, but voluntary dismissal of some claims against particular defendants is not allowed.  See, Hells Canyon Preservation Council v. U.S. Forest Service, 403 F.3d 683, 687-689 (9th Cir. 2005)(analyzing different scenarios under Rule 41(a)(1)).  A plaintiff wishing to eliminate less than all claims in an action without dismissing the case as to any of the defendants, should amend the complaint under Rule 15(a).  Id.  Because plaintiff's notice attempts to withdraw less than all claims as to all defendants, it will be analyzed under Rule 15.

Rule 15(a)(1) provides that a party may amend its pleadings once as a matter of course within 21 days after serving it; or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), 12(e), or 12(f), whichever is earlier.  Rule 15(a)(2) states that in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave, which should be freely given "when justice so requires."

Given that defendants consented to the withdrawal, the court will consider plaintiff's notice as a motion under Rule 15(a), and grant it to remove from consideration the withdrawn claims. See, S.E.C. v. Mannion, 28 F.Supp.3d 1304, 1307 (N.D. Ga. 2014)(construing motion under Rule 41(a) as an unopposed motion under Rule 15 to delete the claims to which the motion referred); Chan v. County of Lancaster, 2013 WL 2412168, at *16-17 (E.D. Pa. June 4, 2013)(construing plaintiff's request to withdraw as a request to amend, and deeming second amended complaint

amended without need for further pleading).  The Complaint is deemed amended without further
pleading, to eliminate what plaintiff has classified as Category I Claims.[12]

**F.  Requests for Leave to Amend**

Beyond withdrawal, plaintiff requested leave to amend the Complaint (Docket No. 63 at p.
60).  The broad, permissive language of Rule 15(a) does not mean that there are no standards by
which the trial court is to be guided.  Leave to amend may be denied when the request is
unsupported or characterized by undue delay, absence of diligence, futility or bad faith.  <u>See</u>,
<u>Calderón-Serra</u> v. <u>Wilmington Trust Co.</u>, 715 F.3d 14, 19 (1st Cir. 2013)(listing grounds justifying
denial of leave to amend); <u>Aponte-Torres</u> v. <u>University of Puerto Rico</u>, 445 F.3d 50, 58 (1st Cir.
2006)(same).  For the reasons explained below, the leave request must be denied.

First, the request was not adequately supported.  The liberal language of Rule 15(a) must
be balanced against Fed. R. Civ. P. 7(b)(1), which governs the requirements for all motions and
provides that any motion shall be made in writing, shall state with particularity the grounds
therefor, and shall set forth the relief or order sought.  <u>See</u>, <u>Calderon</u> v. <u>Kansas Dept. of Social and
Rehabilitation Services</u>, 181 F.3d 1180, 1186 (10th Cir. 1999)(examining interaction of Rule
7(b)(1) and Rule 15(a)).  With that in mind, before a request for leave to amend is recognized as a
motion for leave to amend properly before the court, it must give notice to the district court and to
the opposing party of the basis of the proposed amendment.  <u>See</u>, <u>Roskam Baking Co., Inc.</u> v.
<u>Lanham Machinery Co., Inc.</u>, 288 F.3d 895, 906 (6th Cir. 2002)(pointing out that court must have

---

[12] In this sense, the notice of withdrawal is GRANTED.  To the extent it asks for authorization to file another document –"perhaps…
an amended complaint" (Docket No. 146 at p. 5) – it is DENIED.  No additional filing is necessary to formalize the withdrawal.

before it the substance of the proposed amendment to determine if the amendment is appropriate).
This element is missing.

At footnote 24 of the 2012 opposition to the motions to dismiss, plaintiff stated in part that
the "Complaint satisfies the requirements of Rule 12(b)(6) as to all of the claims … and [t]o the
extent the [c]ourt disagrees, [plaintiff] seeks leave to amend the Complaint pursuant to Federal
Rule of Civil Procedure 15(a)(2)" (Docket No. 63 at p. 60).[13]  The wording is insufficient to sustain
a request to amend with the particularity required by Fed. R. Civ. P. 7(b)(1).[14]  Plaintiff proffered
no specific language for the court to consider.  See, In re 2007 Novastar Financial, Inc. In re 2007
Novastar Financial Inc., Securities Litigation, 579 F.3d 878, 884-885 (8th Cir. 2009)(sustaining
ruling denying motion for leave to amend, given that party neither submitted a proposed amended
complaint nor proffered the substance of the amendment to the district court); Aponte-Torres, 445
F.3d at 50, 58-59 (denying leave where plaintiffs did not specify what additional facts or claims
might be included in an amended pleading (should one be allowed)).[15]

Second, any attempt to cure the deficiency at this juncture would be unreasonably late.
See, Rodríguez-Pérez v. Hospital Damas, Inc., 769 F.3d 800, 802 (1st Cir. 2014)(recognizing
undue delay as adequate reason to deny motion to amend).  To this end, the First Circuit has said

---

[13] He reiterated the request during the January 2017 motion hearing (Transcript at p. 109).

[14] See, Kuyat v. Biomimetic Therapeutics, Inc., 747 F.3d 435, 444 (6th Cir. 2014)(denying request to amend that stated,
"Alternatively, Plaintiffs request leave to amend the Complaint in the event that the Court finds that it falls short of the applicable
pleading standards in any respect"); Dudek v. Prudential Securities, Inc., 295 F.3d 875, 880 (8th Cir. 2002)(denying leave to amend,
for it stated "if defendants motion to dismiss is granted, plaintiffs should be permitted to file an amended complaint"); Calderón,
181 F.3d at 1187 (denying request that asked for leave in the event the court determined that additional facts needed to be stated).

[15] See also, Verhein v. South Bend Lathe, Inc., 598 F.2d 1061, 1063 (7th Cir. 1979)(denying motion for leave to amend where no
proposed amended complaint was attached, and plaintiff's brief in support of the motion for leave to amend asserted no facts to
support a valid theory of liability that would cure defects in original complaint); Dudek, 295 F.3d at 880 (denying motion for leave
to amend because plaintiffs did not include a proposed amended  pleading and failed to describe what changes they would make to
avoid dismissal); Lanham Machinery, 288 F.3d at 906 (stating that no request to amend the complaint was properly before the court
in part because plaintiff never submitted a proposed amendment for the court to review, and did not indicate what allegations the
amended complaint would contain to support a claim).

that when considerable time has elapsed between the filing of the compliant and the motion to amend, the movant has the burden of showing some valid reason for the delay. Id. Considerable time passed here. Plaintiff initiated the action in May 2012; the former officers moved to dismiss in September 2012 and October 2012; and the FDIC-R did so in October 2012. Plaintiff opposed dismissal in October 2012 (including with the opposition a general request to amend); and the former officers and the FDIC-R replied in November 2012 and December 2012. In January 2017, plaintiff reiterated the general request to amend (Transcript at p.109).

To justify the delay, plaintiff stated that after the motions to dismiss were filed, there was no other activity in the case. Id. But that is no legitimate reason for not having moved to amend with a specific proposal, for there was no stay against doing so. See, Calderón-Serra, 715 F.3d at 20 (denying motion for leave to amend because it was not filed until nearly a year after the commencement of the action and many months after the fully briefed motions to dismiss had been taken under advisement; appreciable delay in the absence of good reason for it, is enough to justify denying a motion for leave to amend).

Third, considering the interrelationship between the Bank and the core allegations of breach upon which plaintiff relies to support the claims, no plausible scenario arising out of the events leading to the Bank's closing would allow him to bypass the element of injury to the Bank. In any such case, the action would be derivative and belong to the FDIC-R.[16] As plaintiff would not withstand a motion to dismiss, amendments would be futile and serve no useful purpose. See,

---

[16] During the motion hearing, plaintiff mentioned that the holding company not only owned the Bank but also subsidiaries that needed to be recapitalized, and specifically directed the court's attention to R-G Mortgage Corporation (Transcript at p. 60). He noted that RGFC suffered the loss of its interest in the mortgage company; the loss was unique to the holding company; and therefore cannot be considered a harm to the Bank. Id. at pp. 60-61. By the time the FDIC-R was appointed receiver on April 30, 2010, R-G Mortgage was a subsidiary of the Bank. As the allegations have been configured, plaintiff cannot show injury independent of injury to R-G Mortgage just as it cannot show injury independent of injury to the Bank. Based on the preceding discussion, those actions are derivative and belong to the FDIC-R.

Hatch v. Department for Children, Youth and their Families, 274 F.3d 12, 19 (1st Cir. 2001)(explaining that if case is not beyond discovery and no summary judgment motion has been filed, futility exists where proposed amendment "could not" withstand a 12(b)(6) motion to dismiss.). See also, Glick v. Koening, 766 F.2d 265, 268 (7th Cir. 1985)(observing that district court was justified in denying an amendment where the substance of the proposed amendment would not cure the original pleading).

## IV.    CONCLUSION

The withdrawal notice at Docket No. 146 is GRANTED IN PART AND DENIED IN PART, to eliminate from the court's consideration what plaintiff characterized as Category I Claims. The requests for leave to amend are DENIED. As to the Category 2 Claims before the court, dismissal is appropriate as a matter of law.

Viewing the Complaint as a whole, the allegations show derivative rather than direct claims. Plaintiff has not demonstrated that he can prevail without showing injury to the Bank. The action belongs to the FDIC-R. Therefore, the motions at Docket Nos. 32-1, 34-1, 53 and 54 are GRANTED. In light of this ruling, plaintiff cannot prevail against XL. The Complaint is DISMISSED. Judgment shall be entered accordingly.

**SO ORDERED**.

In San Juan, Puerto Rico, this 30th day of May, 2017.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge